# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 04-6065 MN

_____

| | | |
|---|---|---|
| In re: Lily Rose | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Lily Rose | * | Appeal from the United States |
| | * | Bankruptcy Court for the District |
| Plaintiff-Appellee, | * | of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Educational Credit Management | * | |
| Corporation | * | |
| | * | |
| Defendant-Appellant | * | |
| | * | |
| Texas Guaranteed Student Loan | * | |
| Corporation | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: May 19, 2005
Filed: May 31, 2005

_____

Before, FEDERMAN, MAHONEY, and VENTERS, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

Creditor Educational Credit Management Corporation (ECMC) appeals an order of the bankruptcy court discharging debtor Lily Rose's student loans. We reverse.

## FACTUAL BACKGROUND

In 1983 Rose graduated from St. Paul Technical College. She then worked as a medical technician until June of 1990, when she graduated from the University of Minnesota with a Bachelor of Science degree in elementary education. Following graduation she became licensed as an elementary school teacher, but that license has now lapsed. She continued her studies and completed the course work for a master's degree in early childhood special education, but has never finished her final project. She did, however, obtain a license in early childhood special education. Rose financed her education with student loans. At the time of trial, she owed ECMC the sum of $41,453.44.[1]

Debtor is a 42 year-old unmarried woman in good health. She has been employed for the last eight years as a teacher/care giver at the Fraser School, a private school that focuses on pre-school special-needs children. She has lived in the same apartment for seven years. For the last three years she has shared the apartment with a man named William Tomany, who has co-signed a one-year lease on the apartment. Rose and Tomany share expenses and maintain a joint checking account.

Rose earns $12.68 per hour, works 40 hours a week, has a gross annual salary of $26,374.40, or $2197.87 per month, and nets $1676.81 per month. She has in the past worked approximately 20-30 hours a month at second jobs, but has been unable

---

[1]At the time of trial, Rose owed an additional $47,779.20 to Texas Guaranteed Student Loan Corporation. That defendant did not, however, appeal the bankruptcy court's determination that the obligation is dischargeable.

to continue those jobs due to physical and/or emotional stress. She expects a two to three percent increase in her salary each year. She owns neither any real estate nor an automobile, and other than a retirement account, owns no significant assets. Her monthly expenses total $1505.00, consisting of the following:

| | |
|---|---|
| Rent: | $700.00 |
| Electricity | $50.00 |
| Telephone | $78.00 |
| Clothing | $90.00 |
| Food | $150.00 |
| Gasoline | $150.00 |
| Insurance | $50.00 |
| Prescriptions | $65.00 |
| Cleaning Supplies | $25.00 |
| Personal Hygiene | $50.00 |
| Recreation | $40.00 |
| Laundry | $45.00 |
| Newspapers | $10.00 |

As scheduled, Rose has $171.81 per month in disposable income ($1676.81 minus $1505.00). At trial, Rose testified that her son Brian, who is 21 years old, lived with her at the time she filed for bankruptcy relief, but that he has since moved out. Her scheduled expenses include some of the costs related to Brian's residency. For example, since Brian moved out the clothing costs have been reduced to $60.00 per month, and the laundry costs to $30.00. Based upon that testimony, she now has $261.81 in disposable income. She also testified that Tomany pays one-half of the rent each month, increasing her current disposable income by the sum of $350.00, for total disposable income of $611.81.

Prior to trial, ECMC informed Rose of the United States Department of Education's William D. Ford Program (the Ford Program). The Ford Program offers a borrower, who consolidates her student loans, the option to choose one of the following repayment plans: (1) the standard 10-year plan; (2) the extended 30-year

plan; (3) the graduated 30-year plan; and (4) the Income Contingent Repayment Plan (ICRP). The ICRP allows a borrower to remain current on her loan obligations by paying an amount based on income, debt, and family size for 25 years, after which the debt is canceled.[2] Based upon the fact that the balance owed to ECMC is $41,453.44, Rose could repay her student loan obligation in full under the extended standard plan with a payment of $224.00 per month for the first year and a payment period of approximately 25 years.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[3] We review *de novo* the bankruptcy court's conclusion that the repayment of a student loan will impose an undue hardship on the debtor.[4]

## DISCUSSION

The Bankruptcy Code (the Code) provides that student loans are nondischargeable, unless requiring the debtor to repay them would impose an undue hardship:

---

[2]At trial, there was evidence that Rose's payment under the IRCP would be approximately $242.67, based on her 2002 income, assuming total student loans of $89,232.44.

[3]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[4]*Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003).

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

. . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.[5]

The Code does not define undue hardship. In enacting this provision, however, Congress clearly expressed its intent to prevent recent graduates from embarking on a lucrative career after discharging their student loans.[6] In the Eighth Circuit, undue hardship is determined by a totality of circumstances test as first set forth in *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews).*[7] In applying this approach, the court must consider the following: (1) the debtor's past, current, and reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor and the debtor's dependents; and (3) the other relevant facts and circumstances unique to the particular case.[8]

---

[5] 11 U.S.C. § 523(a)(8).

[6] *In re Long,* 322 F.3d at 554.

[7] *Id.,* (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews),* 661 F.2d 702, 704 (8th Cir. 1981)); *See also Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford),* 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001).

[8] *Ford,* 269 B.R. at 676.

As to the debtor's current income and expenses, the evidence was that she has $261.81 available each month, after payment of reasonably necessary living expenses, even assuming that she pays the entire rental obligation herself. The bankruptcy court held that her future financial situation might worsen if Tomany chose to move out, which he testified was possible. Nevertheless, even without another roommate, the evidence shows sufficient disposable income to not only pay on the loan, but to make the full payment. The court also held that at some point Rose might need to purchase a car, since the one she uses now is owned by her mother. But Rose offered no evidence as to when she might need to purchase a vehicle, and what the cost might be. Certainly, there will be changes in her income and expenses in the future. But at this point, the bankruptcy court could only speculate as to what the impact of those changes might be. There is no evidence, for example, that she has health issues that will in the near future prevent her from working, that other family members will require her care, or that she will not be able to maintain the skills needed for this or a comparable job. There was, thus, no evidence before the court that would raise this speculation to the level of being reasonably reliable facts and circumstances. So, even though we are obligated to consider future factors, the debtor did not prove what those factors would be. We have, instead, a debtor who has the current income to make payments on her loan, and who has not shown with reasonably reliable evidence that that will change in the future.

The bankruptcy court, therefore, erred in finding that failing to discharge this obligation would impose an undue hardship on Rose. We reverse, and hold that the student loan obligation to ECMC in the amount of $41,453.44 is nondischargeable.

––––––––––––––