# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 12-6010

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Susan M. Shaffer, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Susan M. Shaffer, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellee, | * | Southern District of Iowa |
| | * | |
| v. | * | |
| | * | |
| United States Department of | * | |
| Education, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Iowa Student Loan Liquidity | * | |
| Corporation, | * | |
| | * | |
| Defendant-Appellant, and | * | |
| | * | |
| Educational Credit Management | * | |
| Corporation, | * | |
| | * | |
| Intervenor-Defendant. | * | |

Submitted: August 28, 2012
Filed: October 30, 2012

Before KRESSEL, Chief Judge, SCHERMER and NAIL, Bankruptcy Judges.

NAIL, Bankruptcy Judge.

Iowa Student Loan Liquidity Corporation ("Iowa Student Loan") appeals the December 1, 2011 judgment of the bankruptcy court[1] determining the educational loan debts Debtor Susan M. Shaffer ("Debtor") owed to the United States Department of Education, Iowa Student Loan, and Educational Credit Management Corporation were discharged.[2] We affirm.

## BACKGROUND

Debtor is an unmarried woman in her mid-thirties. She has no dependents. Since her mid-teens, Debtor has suffered from a variety of mental health issues, including eating disorders, depression, self-harm (cutting), and anxiety. These mental health issues have adversely affected both her academic endeavors and her ability to maintain employment.

In 1994, Debtor enrolled at the University of Northern Iowa. At the end of the school year, she returned to Iowa City to be closer to her family. In August 1995, she enrolled at the University of Iowa. She attended that school, as either a full-time student or a part-time student, until 2002, when she received a bachelor of arts degree in psychology. Debtor also attended Kirkwood Community College from time to time to obtain pre-pharmacy credits and to maintain her coverage under her parents' health insurance. In March 2007, she enrolled at the Palmer College of Chiropractic Medicine. She attended that school until June 2008. Debtor left without completing her degree when she realized she would never be able to repay her outstanding student loans. To fund her education at these various institutions, Debtor obtained educational loans totaling approximately $204,525.00, which includes $57,489.11

---

[1]The Honorable Anita L. Shodeen, United States Bankruptcy Judge for the Southern District of Iowa.

[2]Neither the United States Department of Education nor Educational Credit Management Corporation appealed the bankruptcy court's judgment.

Debtor owed to the United States Department of Education, $47,900.00 she owed to Educational Credit Management Corporation, and $99,136.00 she owed to Iowa Student Loan.[3]

After leaving the Palmer College of Chiropractic Medicine, Debtor again returned to Iowa City to live with her mother. In November 2008, she began working in the Women's Health Clinic at the University of Iowa. In August 2009, she left that job and began working as an accounts receivable specialist for Precision Revenue Strategies. While there, Debtor suffered from depression, which caused her to take two medical leaves of absence. In 2010, following her second leave of absence, Debtor believed she would eventually be fired, so she left that job, too. While she sought another job, Debtor met her living expenses by taking temporary jobs, cashing in her retirement funds, utilizing her disability insurance payments, and accepting contributions from other members of her family. In July 2011, she began working in the radiation oncology department at the University of Iowa.

Debtor filed a petition for relief under chapter 7 of the bankruptcy code on April 15, 2010. On July 23, 2010, she filed a complaint to determine the dischargeability of her educational loan debts. The matter was tried, and on December 1, 2011, the bankruptcy court entered a memorandum decision in which it concluded excepting the educational loan debts Debtor owed to the United States Department of Education, Iowa Student Loan, and Educational Credit Management Corporation from discharge would impose an undue hardship on Debtor and a judgment determining those debts were discharged. On February 1, 2012, Iowa Student Loan filed a timely notice of appeal.[4]

---

[3] These figures do not include accruing interest.

[4] The time for all parties to appeal the bankruptcy court's judgment ran from January 18, 2012, the date on which the bankruptcy court entered an order denying Educational Credit Management Corporation's timely motion to amend the

-3-

STANDARD OF REVIEW

We review *de novo* the bankruptcy court's conclusion that excepting Debtor's educational loan debts from discharge would impose an undue hardship on Debtor. *Walker v. Sallie Mae Servicing Corp.* (*In re Walker*), 650 F.3d 1227, 1230 (8th Cir. 2011) (citing *Long v. Educ. Credit Mgmt. Corp.* (*In re Long*), 322 F.3d 549, 553 (8th Cir. 2003)). We review for clear error the findings of fact on which the bankruptcy court based its conclusion. *Id.* (citing *Reynolds v. Pa. Higher Educ. Assistance Agency* (*In re Reynolds*), 425 F.3d 526, 531 (8th Cir. 2005)). We will not overturn the bankruptcy court's findings of fact "unless, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made." *Id.* (citing *Cumberworth v. U.S. Dept. of Educ.* (*In re Cumberworth*), 347 B.R. 652, 657 (B.A.P. 8th Cir. 2006)).

DISCUSSION

If "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents," a discharge under 11 U.S.C. § 727 discharges the debtor from a debt for an educational loan "made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8). The debtor must establish undue hardship by a preponderance of the evidence. *Walker*, 650 F.3d at 1230. In determining whether the debtor has met this burden, the bankruptcy court must consider the totality of the debtor's circumstances, taking into account:

> (1) the debtor's past, present, and reasonably reliable future
> financial resources; (2) a calculation of the reasonable

_____

bankruptcy court's judgment. Fed.R.Bankr.P. 8002(b).

-4-

living expenses of the debtor and her dependents; and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case.

*Id.* (citing *Long*, 322 F.3d at 554).

In its memorandum decision, the bankruptcy court carefully considered and addressed each of the foregoing factors. On appeal, Iowa Student Loan raises three issues: (1) whether the bankruptcy court erred in not separately evaluating each of its 13 loans to determine whether each such loan imposed an undue hardship on Debtor; (2) whether the bankruptcy court erred in finding Debtor's income limitations were not self-imposed; and (3) whether the bankruptcy court erred in considering, without the aid of expert testimony, the effect of Debtor's mental health issues on her ability to obtain and maintain employment.[5]

With respect to the first issue, we have held where more than one educational loan is involved, the bankruptcy court must separately evaluate each under § 523(a)(8): "We hold that the bankruptcy court's application of § 523(a)(8) to each of [debtor's] educational loans separately was not only allowed, *it was required*." *Andresen v. Nebraska Student Loan Program, Inc.* (*In re Andresen*), 232 B.R. 127, 137 (B.A.P. 8th Cir. 1999) (emphasis added). While the bankruptcy court's memorandum decision does not clearly set forth a separate evaluation of each of Debtor's educational loans, Iowa Student Loan did not raise this issue in the bankruptcy court.[6] Consequently, we will not consider it on appeal.[7] *Edwards v.*

---

[5]We have listed the issues in the order in which Iowa Student Loan listed them in its Statement of the Issues, not in the order in which it discussed them in the Argument portion of its briefs.

[6]Educational Credit Management Corporation, which is not a party to this appeal, raised the issue of whether each of Debtor's educational loans needed to be separately evaluated for the first time in its motion to amend the bankruptcy court's

*Edmondson* (*In re Edwards*), 446 B.R. 276, 280 (B.A.P. 8th Cir. 2011) (citations therein).

In discussing this issue in its briefs, however, Iowa Student Loan renews two arguments it *did* make in the bankruptcy court. Both merit discussion regardless of whether Debtor's educational loans are evaluated separately or collectively.

judgment. The bankruptcy court denied that motion, in part because no one raised the issue at trial, and no one appealed the bankruptcy court's order denying it.

[7]Were we to do so, however, the outcome in this case would likely be the same. While the bankruptcy court did not expressly state Debtor could not make *any* payment on *any* of her educational loan debts, based on the evidence in the record, that is the fairest reading of the bankruptcy court's memorandum decision. Debtor testified her monthly take-home pay would be $1,500 to $1,600. This was the *only* evidence of her take-home pay presented to the bankruptcy court: Debtor had not yet been paid by her new employer and thus had not received a pay stub or an earnings statement. Iowa Student Loan now characterizes Debtor's testimony as a "vague guess[ ]," but it did not object to her testimony on this point on that or any other basis, request a continuance until a pay stub or an earnings statement could be produced, or offer any evidence to the contrary. Debtor also provided evidence–through her testimony regarding an exhibit that was admitted by the bankruptcy court but was not included in the record on appeal–supporting the bankruptcy court's finding that Debtor's reasonable monthly living expenses comprised $310 for lot rent (increasing to $320 in October 2011), $150 for utilities, $109 for cell phone and internet access, $104 for automobile and renter's insurance, $100 for transportation costs, $400 for food, $100 for medical and dental expenses, $75 for recreation, $50 for clothing, and $300 for other regular expenses including personal care, housekeeping supplies, home maintenance, furnishings, and pet care (a total of $1,708 beginning in October 2011). Iowa Student Loan has not challenged the bankruptcy court's finding that Debtor's monthly living expenses are reasonable. Based on this evidence, the bankruptcy court found Debtor's monthly disposable income was less than $100, a sum the bankruptcy court subsequently described as "minimal" in its order denying Educational Credit Management Corporation's motion to amend the bankruptcy court's judgment. This finding is not clearly erroneous: By our reckoning, Debtor's reasonable monthly expenses *exceed* her monthly disposable income by $100 to $200.

Specifically, Iowa Student Loan argues Debtor admitted having the ability to pay $350 to $400 per month on her student loans. This oversimplifies Debtor's testimony. Debtor testified she could "probably" make such a payment, but even without the benefit of observing her demeanor on the witness stand–a benefit the bankruptcy court of course had–it is readily apparent from even the most casual reading of the transcript she was not confident she could do so. Moreover, Debtor was not asked to–and did not–explain how she could possibly make such a payment, given her current monthly take-home pay and her current reasonable monthly living expenses. Consequently, we do not view her "admission" as evidence that would *require* the bankruptcy court to find Debtor could make such a payment without undue hardship. *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574 (1985) (citations therein) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Iowa Student Loan also argues Debtor's spending more in the past for clothing and eating out than the amount the bankruptcy court found reasonable going forward further demonstrates Debtor's ability to make payments on her educational loans. We disagree. At most, what Iowa Student Loan describes as Debtor's "alarming[ly] profligate" spending in the past demonstrates Debtor–like many, if not most, other debtors–may have made unwise spending decisions and may have lived beyond her means. This does not mean the bankruptcy court should have expected Debtor to continue to live beyond her means to make payments on her educational loans in the future. Consequently, we do not view Debtor's past spending for clothing and eating out–even if "alarming[ly] profligate"–as evidence that would *require* the bankruptcy court to find Debtor could make payments on her educational loans without undue hardship in the future. *Id.*

With respect to the second issue Iowa Student Loan raises on appeal, the Eighth Circuit Court of Appeals has held "[a] debtor is not entitled to an undue hardship discharge of student loan debts when his current income is the result of self-

imposed limitations, rather than lack of job skills[.]" *Educ. Credit Mgmt. Corp. v. Jesperson* (*In re Jesperson*), 571 F.3d 775, 782 (8th Cir. 2009). Iowa Student Loan argues Debtor's current income is the result of a self-imposed limitation, *i.e.*, her decision to drop out of chiropractic school.[8] This argument fails for two reasons. First, it presupposes–with no support in the record– had Debtor not dropped out: (1) she would have graduated; (2) she would have found employment as a chiropractor; and (3) she would have earned enough as a chiropractor to generate sufficient net income to pay off not only her current educational loan debts, but also the additional educational loan debts she would have incurred in completing her degree. Second, and more importantly, Debtor testified regarding both her decision to apply to chiropractic school and her subsequent decision to drop out. Inasmuch as it found Debtor's income limitations were not self-imposed, the bankruptcy court at least implicitly accepted Debtor's explanation of her decisions. Giving due regard to the opportunity of the bankruptcy court to judge Debtor's credibility, Fed.R.Bankr.P. 8013, we cannot say the bankruptcy court's finding was clearly erroneous.

Finally, with respect to the third issue Iowa Student Loan raises on appeal, we have held expert testimony is *not* required in cases such as the one before us.

> The bankruptcy court determined that [debtor] could
> endure only work that was essentially ministerial and that
> she suffered from the stress of increased responsibility due
> to a lack of self-confidence. While there was no evidence
> that the debtor was clinically disabled or maladjusted, the
> bankruptcy court expressly found that [debtor] was not fit
> for the higher responsibility and higher paying positions

_____

[8]Iowa Student Loan contends– contrary to the sage advice of both Will Rogers, who said, "When you find yourself in a hole, stop digging," and Kenny Rogers, who sang, "You got to . . . know when to fold 'em"–Debtor should have taken out *more* educational loans in the hope this would enable her to pay off her *existing* educational loans.

she tried and then left. *There is no reason to view the trial court's findings as unreliable merely because no expert evidence was introduced.* The record offers no reason to suggest that the bankruptcy court made its decision without due consideration. The bankruptcy court took evidence, judged the debtor's credibility, and applied the proper totality of the circumstances test. Its finding of undue hardship is not clearly erroneous.

*Cline v. Illinois Student Loan Assistance Ass'n* (*In re Cline*), 248 B.R. 347, 350 (B.A.P. 8th Cir. 2000) (emphasis added). Iowa Student Loan argues the bankruptcy court "speculated" about Debtor's mental health issues and insists the bankruptcy court should not have considered Debtor's mental health issues without the aid of expert testimony.[9] For the reasons discussed in *Cline*, we disagree. The bankruptcy court heard Debtor's testimony, judged her credibility, and accepted her description of her mental health issues and their effect on her ability to maintain employment. Iowa Student Loan offered no testimony–expert or otherwise–or other evidence to the contrary. Consequently, we cannot say the bankruptcy court's finding was clearly erroneous.

## CONCLUSION

Having reviewed *de novo* the bankruptcy court's conclusion that excepting Debtor's student loan debts from discharge would constitute an undue hardship and having reviewed for clear error the findings of fact on which the bankruptcy court based its conclusion, we affirm the judgment of the bankruptcy court determining the

---

[9]In support of its position, Iowa Student Loan cites us to two bankruptcy cases, one from the Northern District of Ohio and the other from the Western District of Michigan. While we respect the opinions of bankruptcy courts from other circuits, we are not bound by them. We are, however, bound by our own opinions, including *Cline*.

educational loan debts Debtor owed to the United States Department of Education, Iowa Student Loan, and Educational Credit Management Corporation were discharged.

_____