# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 13-6016

_____

In re: Chelsea A. Conway

*Debtor*

------------------------------

Chelsea A. Conway

*Plaintiff - Appellant*

v.

National Collegiate Trust; First Marblehead Corp., Inc.

*Defendants - Appellees*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: July 19, 2013
Filed: August 21, 2013

_____

Before KRESSEL, SALADINO and SHODEEN, Bankruptcy Judges.

_____

SALADINO, Bankruptcy Judge.

The Plaintiff, Chelsea Conway, appeals the decision of the bankruptcy court finding her student loan obligations to National Collegiate Trust ("NCT") and First Marblehead Corp., Inc.[1] to be nondischargeable. For the reasons stated below, we reverse and remand.

<u>FACTUAL BACKGROUND</u>

Many of the underlying facts are uncontroverted.[2] On December 7, 2009, Ms. Conway filed for Chapter 7 bankruptcy protection and received a discharge on March 16, 2010. On December 16, 2011, Ms. Conway filed a motion to reopen her case, which motion was granted on December 20, 2011. On January 24, 2012, Ms. Conway filed an adversary proceeding against NCT pursuant to 11 U.S.C. § 523(a)(8) for the purpose of determining dischargeability of her student loans.[3]

Ms. Conway is single and has no dependents. She graduated from Webster University in 2005 with a Bachelor of Arts degree in media communications. She also attended St. Louis Community College both prior to and after attending Webster University. From October 21, 2003, through September 2006, Ms. Conway entered into 15 separate student loan notes with NCT. All 15 notes are educational loans as defined in 11 U.S.C. § 523(a)(8) and were incurred for higher education expenses.

---

[1]First Marblehead Corp. is the loan servicer for NCT, the holder of the loans, and will not be separately referenced herein.

[2]The parties filed a fact stipulation in the bankruptcy court. Also, exhibits were received at trial, but copies are not on the bankruptcy court docket and only an incomplete set of certain exhibits were included in Ms. Conway's appendix filed with her brief on appeal.

[3]The initial complaint was also filed against Sallie Mae/SLM Corporation and Key Bank. Those defendants were later dismissed from the proceeding after stipulating that their debts were dischargeable.

The total original balance of all 15 loans was $70,100.00. As of November 5, 2012, the total balance owed, with interest, was $118,579.66. The interest rates on the 15 student loans range from 3.25% to 5.150%.

Since August 22, 2005, NCT has granted to Ms. Conway part-time deferments, temporary forbearances, and forbearances on all 15 notes. She has repaid a total of $5,734.48 to NCT on the 15 student loans. Ms. Conway had additional student loan obligations to Key Bank, N.A. in the amount of $9,000.00, and Sallie Mae/SLM Corp. in the amount of $11,000.00, both of which were discharged pursuant to stipulations and bankruptcy court orders approving the stipulations. Ms. Conway also has federally-guaranteed student loans of approximately $18,000.00 that are not part of this proceeding.[4]

In October 2005, Ms. Conway began working at American Equity Mortgage as a loan sales analyst. In July 2007, she was laid off from that job and began working part-time in various temporary office positions. In December 2007, she began working full-time at Administaff of Texas as a guest specialist. She was laid off from that job in September 2008, and again began working part-time in temporary office positions. In April 2009, she began part-time work as a waitress and held a position at a bank for a short time. Currently, she works two part-time jobs as a restaurant server and, as indicated by the fact stipulation, she earned monthly net income of $2,040.36 as of July 2012 and $1,379.97 as of December 2012. Her income tends to fluctuate due to the seasonal business at one of the establishments. Ms Conway states that her monthly expenses (without the NCT debt) are $1,737.25 and has provided a detailed breakdown of those expenses.

---

[4]According to Ms. Conway's brief, these federal loans are consolidated and are being paid through the Income Contingent Repayment Plan available under the William D. Ford Federal Direct Student Loan Program. Ms. Conway states that no such program is available for the private student loans at issue in this case and NCT does not suggest that any similar program is available for its loans.

## STANDARD OF REVIEW

"Undue hardship 'is a question of law which we review de novo. Subsidiary findings of fact on which the legal conclusion is based are reviewed for clear error.'" *Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 779 (8th Cir. 2009) (quoting *Reynolds v. Pennsylvania Higher Educ. Assistance Agency (In re Reynolds)*, 425 F.3d 526, 531 (8th Cir. 2005)). We will not upset the bankruptcy court's findings of fact unless, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. *Walker v. Sallie Mae Servicing Corp. (In re Walker),* 650 F.3d 1227, 1230 (8th Cir. 2011) (citing *Cumberworth v. U.S. Dep't of Educ. (In re Cumberworth),* 347 B.R. 652, 657 (B.A.P. 8th Cir. 2006)).

## DISCUSSION

Dischargeability of student loans is governed by 11 U.S.C. § 523(a)(8), which provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for student loans, "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]" In contrast to many other types of debts, § 523(a)(8)'s exclusion of student loans from discharge is "self-executing" in the sense that, "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). A debtor's obligation on a student loan remains unless there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor and the debtor's dependents.

A debtor seeking a determination that her educational loan debt is dischargeable under § 523(a)(8) bears the burden of proving, by a preponderance of the evidence, that repayment of those loans would impose an undue hardship. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005).

-4-

"Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used.

> We apply a totality-of-the-circumstances test in determining undue hardship under § 523(a)(8). Reviewing courts must consider the debtor's past, present, and reasonably reliable future financial resources, the debtor's reasonable and necessary living expenses, and "any other relevant facts and circumstances." The debtor has the burden of proving undue hardship by a preponderance of the evidence. The burden is rigorous. "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged."

*Jesperson*, 571 F.3d at 779 (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003)) (footnote omitted).

Our de novo review is somewhat hampered by the failure of both parties to comply with Federal Rule of Bankruptcy Procedure 8006. That rule requires the appellant to file with the clerk a designation of the items to be included in the record on appeal within 14 days after filing a notice of appeal, and the appellee has 14 days thereafter to file a supplemental designation. Neither party did so; therefore, the exhibits received into evidence at trial were not forwarded to us for review as part of this appeal. However, Ms. Conway did file an appendix along with her initial brief which included at least partial copies of some (but not all) of the exhibits received at trial. Further, while we have a transcript of the trial, it does not appear that any witnesses were sworn in to testify. Instead, Ms. Conway and the attorney for NCT simply filed their fact stipulation, introduced exhibits, and provided oral argument. Because the appellant has the burden to demonstrate the merits of her appeal, she

must bear the burden of deficiencies in the record. *Bergman v. Webb (In re Webb),* 212 B.R. 320, 322 n.1 (B.A.P. 8th Cir. 1997); *Burgs v. Sissel,* 745 F.2d 526, 528 (8th Cir. 1984) (per curiam) (stating that pro se litigants are not excused from compliance with substantive and procedural law).

In any event, the bankruptcy court's conclusion regarding undue hardship must be reviewed de novo based on the record we have. In her brief, Ms. Conway raises three assignments of error, all of which essentially assert error in the bankruptcy court's assessment of her ability to pay under its undue hardship analysis. Therefore, we will separately examine each factor of the totality-of-the-circumstances test.

A.    Ms. Conway's Past, Present, and Reasonably Reliable Future Financial Resources.

Reviewing first Ms. Conway's past financial situation, the bankruptcy court found that her tax returns from 2008 through 2011 indicated that her average annual adjusted gross income was $21,972.00, or an average monthly adjusted gross income of $1,831.00. The bankruptcy court's findings indicated that Ms. Conway's adjusted gross income was slightly more than $25,000.00 per year for 2010 and 2011 after lower amounts in 2008 and 2009. The bankruptcy court also found that Ms. Conway received average annual tax refunds of $778.30 during that same period. Thus, based on the fact stipulation, the appendix and the bankruptcy court's findings, Ms. Conway's average monthly gross income – before payroll deductions – was $2,115.00 per month in 2011[5] and less in prior years.

In the joint fact stipulation filed in the bankruptcy court, Ms. Conway agreed that as of July 7, 2012, her combined monthly "net" income (gross income less payroll deductions) from her two part-time jobs was $2,040.36, but that her income

[5]This is based on her 2011 Adjusted Gross Income of $25,390.00 divided by 12 months.

fluctuates due to seasonal hours of operation at one of the part-time jobs. As of December 3, 2012, Ms. Conway's "monthly income" was $1,379.97 according to the fact stipulation.[6] The fact stipulation establishes that her monthly net income in 2012 fluctuated between $1,379.97 and $2,040.36. Included in Ms. Conway's appendix is a one-page document entitled "Current Income Status." Based on the transcript of the trial, this appears to be the first page of what was received into evidence as Exhibit 2. It identifies her gross income, payroll deductions, and her net income from both jobs as of November 27, 2012, and as of the date of bankruptcy filing. That exhibit shows net income of $701.76 from one job and $781.65 from the other, for a total net income of $1,483.41 shortly before trial. This coincides with the bankruptcy court's finding that her present income is "stable." There is nothing in the record to controvert that fact finding.

To support her position that her reasonably reliable future income is no greater than her recent past, Ms. Conway argues that her college degree in media communications does not provide her with the requisite academic credentials or experience to enable her to obtain a job paying more than she currently earns. She asserts that she has sent out more than 200 job résumés and job applications in an attempt to find full-time employment suitable for her education level, but has been unsuccessful. Ms. Conway also notes that she has experienced numerous career and financial setbacks, including two layoffs from full-time jobs (one in the travel industry and one in the mortgage industry) in the eight years since she graduated college.

---

[6]The July 2012 and December 2012 monthly income figures set forth in the fact stipulation generally coincide with the figures set forth on an income summary exhibit attached to the appendix filed by Ms. Conway. Therefore, despite the different terms used in the fact stipulation, these amounts represent net income after payroll deductions.

Ms. Conway also argues that various medical issues preclude her from working more than 40 hours per week and that her medical issues will persist into the future. Unfortunately, Ms. Conway failed to include any evidence regarding her medical history in the record on appeal. The bankruptcy court dismissed those arguments as being without evidentiary support. The record on appeal is also without any evidentiary support regarding Ms. Conway's medical conditions, so those arguments will not be considered.

The bankruptcy court specifically found that Ms. Conway's written submissions "evidence well-developed writing and reasoning skills" and that "Debtor's demeanor and exceptional focus during trial reveals that Debtor is articulate, poised, intelligent and quite capable." Ultimately, the bankruptcy court found that "Debtor has at least 30 years left to navigate the job market and upon this Court's evaluation of the facts, Debtor has reasonably reliable future financial resources to pay NCT."

While we certainly cannot dispute the bankruptcy court's fact findings as to Ms. Conway's capabilities, we disagree as to her reasonably reliable future financial resources. The record, limited as it may be, is clear that despite graduating from college eight years ago, Ms. Conway has never made much more than $25,000.00 per year.[7] This is not a case of a debtor who is intentionally under employed. She has made diligent efforts to find higher paying work – having sent out over 200 applications – to no avail. She has twice been laid off from full-time jobs through no apparent fault of her own. Despite those setbacks, she has consistently pursued employment and has not been unemployed for any significant period of time. Ms.

---

[7]"Never" is used loosely – the limited record does not reveal anything about Ms. Conway's income prior to 2008, though it does have specific information in the bankruptcy court's findings of fact regarding her income for 2008 through 2012.

-8-

Conway has actually increased her income somewhat in recent years when she has been working two part-time jobs as a server at restaurants.

Further, NCT argued that Ms. Conway had monthly net income of $2,040.36 and disposable income (after expenses of $1,737.25, discussed below) of around $300.00 per month. She does not. The fact stipulation states that she had net income of $2,040.36 in July 2012, but that was just a one-month snapshot, not a monthly average. Her income fluctuates due to seasonal business at one of the restaurants where she works, and her monthly net income was as low as $1,379.97 per month in December 2012. Thus, while she may have had disposable income of around $300.00 in July 2012, her disposable income was negative by approximately $357.00 in December 2012.

Of course, even if Ms. Conway's disposable income does average around $300.00 per month, it is uncontroverted that the minimum principal and interest payment due to NCT is substantially higher – $846.16 per month. It is also uncontroverted that the loans are severely in default and have grown from approximately $70,000.00 to more than $118,000.00 at the present time. Ms. Conway has been unable to pay the loan obligations in the past, although she has attempted to do so, having repaid a total of $5,734.48 according to the fact stipulation. It is also uncontroverted that Ms. Conway has no further deferment or loan restructuring options available.

Thus, Ms. Conway's past and present financial resources have been and are presently clearly insufficient to service the entire debt owed to NCT. While Ms. Conway may have the "possibility" of earning a higher income in the future, there is no evidence to support that possibility. We will not substitute assumptions or speculation for reasonably reliable facts. *Walker,* 650 F.3d at 1233. Ms. Conway's earning history, lack of disposable income, and inability to land a higher paying job despite diligent efforts since graduating from college in 2005 suggest that her ability

to earn a substantially higher income in the future is not reasonably reliable. Therefore, the bankruptcy court's finding that she has reasonably reliable future financial resources with which to pay the entire debt to NCT is clearly erroneous.

### B. Reasonable and Necessary Living Expenses.

The second factor of the totality-of-circumstances test is to review a debtor's reasonable and necessary living expenses. "To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" *Jesperson*, 571 F.3d at 780 (quoting *DeBrower v. Pa. Higher Educ. Assistance Agency (In re DeBrower)*, 387 B.R. 587, 590 (Bankr. N.D. Iowa 2008)). The bankruptcy court found that Ms. Conway's current monthly expenses total $1,737.25, and further found that her monthly expenses were not excessive, except for the $158.00 per month expense for cell phone service. The bankruptcy court stated that Ms. Conway could likely find a more modest cell phone plan, but there are no facts in the record to suggest what is included as part of her plan or what a more modest plan should cost. Further, the bankruptcy court indicated that Ms. Conway may be able to reduce out-of-pocket medical expenses (listed at $100.00 to $142.00 per month) if she is able to find a job with medical benefits. Ms. Conway does not presently have medical insurance, and we will not speculate whether she would have lower out-of-pocket medical expenses on a monthly basis even if she were able to find a job that has an insurance benefit. As stated in *Jesperson*, "[a] court may not engage in speculation when determining net income and reasonable and necessary expenses." *Id*. (citing *In re Rose,* 324 B.R. 709,712 (B.A.P. 8th Cir. 2005)).

After a review of the expenses listed in the bankruptcy court's findings of fact and the expense listing included in Ms. Conway's appendix on appeal, we agree that Ms. Conway's expenses are modest and commensurate with her resources. In any event, NCT does not challenge Ms. Conway's living expenses in its response to her appeal; its arguments are based solely on her future income potential.

C.    Other Relevant Facts and Circumstances.

The final factor in the totality-of-circumstances test requires consideration of any other facts and circumstances relevant to the undue hardship inquiry. Ms. Conway apparently was injured in a car accident that resulted in certain medical problems for which she has received a small settlement – approximately $625.00. The bankruptcy court's findings of fact indicate Ms. Conway is likely to receive another $1,000.00 as a result of the settlement of the car accident. However, there is nothing in the record to support the possibility of receiving another $1,000.00 payment and, in any event, that amount will not significantly improve her ability to service the NCT debt of more than $118,000.00.

Finally, we are mindful that the parties and the bankruptcy court applied the undue hardship analysis as if the indebtedness due to NCT were a single obligation having a monthly payment of $846.16 instead of 15 separate loans. NCT argued at the bankruptcy court hearing and in its brief on appeal that Ms. Conway's disposable income was sufficient for at least a "partial repayment" of the loans. However, there is no case law in this circuit that would authorize the court to "partially discharge" a student loan.

> The court does not have the authority to modify the payment terms of a student loan or to discharge a partial amount of principal or accrued interest. *Hawkins v. Buena Vista College (In re Hawkins)*, 187 B.R. 294, 300–01 (Bankr. N.D. Iowa 1995); *see also Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 136–37 (B.A.P. 8th Cir. 1999) (criticizing "partial discharge" theory without deciding the issue).

*Faktor v. United States (In re Faktor)*, 306 B.R. 256, 262-63 (Bankr. N.D. Iowa 2004).

The *Andresen* court acknowledged that courts in other jurisdictions have adopted the theory of partial discharge of student loan debt, but explained the "unpredictability," "lack of uniformity of outcomes," and potential inequities inherent in the subjective application of § 523(a)(8), as well as the lack of authority "in the Code or elsewhere" for the judicial revision of the terms of debtors' student loans. 232 B.R. at 129-136.

Although partial discharge of a single loan is unavailable, NCT actually holds 15 separate loans. According to NCT's billing statement included in Ms. Conway's appendix, the monthly installment obligations on those 15 loans range from $39.63 to $98.58 per month. The *Andresen* court held that where multiple loans are involved, "application of § 523(a)(8) to each of . . . [the] loans separately was not only allowed, it was required." *Id.* at 137. In other words, a bankruptcy court can find that some loans are discharged while repayment of one or more others does not constitute an undue hardship. A separate loan-by-loan analysis was not conducted by the bankruptcy court in this case because the court made a fact finding that Ms. Conway had reasonably reliable future financial resources to pay the entire debt. In light of our determination that Ms. Conway has established by a preponderance of the evidence that she does not have reasonably reliable future financial resources to pay the entire debt, a loan-by-loan undue hardship analysis is "required." *Id.* Thus, NCT's "partial repayment" argument is essentially an argument that the court should not allow discharge of the individual loans that Ms. Conway is able to pay without undue hardship.

The record reveals that Ms. Conway's income fluctuates – she had positive disposable income of about $300.00 in July 2012 and negative disposable income of about $357.00 in December 2012. However, those are snapshots of her situation only at those two points in time. The record on appeal does not reveal (at least without using assumptions and speculation) the amount of her present disposable income, if any, available to service a loan or loans of NCT over the course of an

entire year. Therefore, we must remand this matter to the bankruptcy court to determine whether Ms. Conway's present disposable income, if any, over the course of an entire year is sufficient to service any of the individual loan payments due to NCT.[8]

## CONCLUSION

Since the record reveals that Ms. Conway's past, present, and reasonably reliable future financial resources are not sufficient to meet all of the monthly payment obligations to NCT while maintaining a minimum standard of living, we conclude on de novo review that excepting all of the obligations to NCT from discharge would be an undue hardship on Ms. Conway. Therefore, we reverse the decision of the bankruptcy court and remand for further proceedings in accordance with this opinion.

_____

[8]In other words, it is insufficient to say that Ms. Conway is able to pay a particular loan when she had positive disposable income in one month but negative disposable income in another. Since Ms. Conway's income fluctuates, the entire year must be considered to determine if she has sufficient disposable income averaged over the course of the year.