# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 25-6001

_____

In re: RACHEL DUNCANSON,

Debtor.

------------------------------

RACHEL DUNCANSON,

*Plaintiff - Appellee*

v.

BANK OF NORTH DAKOTA,

*Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the Northern District of Iowa

_____

Submitted: June 13, 2025
Filed: August 12, 2025

_____

Before HASTINGS, Chief Judge, SURRATT-STATES, and JONES, Bankruptcy
Judges.

_____

JONES, Bankruptcy Judge.

Appellant Bank of North Dakota ("Bank") appeals the Opinion and Order of the bankruptcy court[1] discharging the student loan debt owed to the Bank by Appellee Rachel Duncanson ("Debtor") pursuant to 11 U.S.C. § 523(a)(8). For the reasons stated below, we affirm.

## FACTUAL BACKGROUND

The Debtor filed her chapter 7 bankruptcy petition on July 14, 2020, and on September 18, 2020, filed an adversary proceeding seeking to discharge her student loan debt owed to the Department of Education ("DOE") and the Bank. After a trial and a supplemental evidentiary hearing, the bankruptcy court held that not discharging one of the Debtor's student loans would impose an undue hardship. The bankruptcy court determined the Debtor's student loan debt owed to the DOE is not dischargeable under 11 U.S.C. § 523(a)(8),[2] but the student loan debt owed to the Bank is dischargeable under 11 U.S.C. § 523(a)(8). The Bank appeals this latter determination of dischargeability.

At the time of the supplemental hearing, the Debtor was 50 years old, single, and had no dependents. After high school, she attended Iowa State University in Ames, Iowa. During her time at Iowa State, the Debtor suffered financial and mental health issues. She eventually earned a Bachelor of Arts degree in physics, education, and communication in 2000, after seven and a half years of study. The Debtor obtained multiple student loans from the DOE to assist her in obtaining this degree and later consolidated them into one loan. As of October 2020, the Debtor owed the DOE $108,073.54.

---

[1]The Honorable Thad J. Collins, Chief Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Iowa.

[2]No party appealed the bankruptcy court's determination regarding the DOE debt.

The first year after earning her degree, the Debtor taught science in Saint Joseph, Missouri. She continued to struggle with mental health issues and moved to Seymour, Iowa to be closer to home. There she taught math and life science for three years, making approximately $23,000 a year. The Debtor left Seymour, Iowa, and spent the next three years in Sioux Falls, South Dakota, working at Cigna Tel-Drug.

In 2007, she enrolled in the engineering program at South Dakota State University and earned her Bachelor of Science degree in mechanical engineering in 2010. The Debtor obtained student loans from the Bank to finance her engineering degree and later consolidated them into one loan. As of October 2020, the Debtor owed the Bank $96,074.39.

After earning her engineering degree, the Debtor worked at POET Ethanol in Bingham Lake, Minnesota, as a night shift supervisor of the plant. The company had an ethanol spill, and her position was eliminated through no fault of her own.

The Debtor then moved back to her parents' home in Sheldon, Iowa. She searched for jobs that would utilize her degrees but was unsuccessful. During this time, she worked intermittently as a yoga instructor and began delivering newspapers, which she did for six years. She also worked on her mental and physical health issues and underwent gastric bypass surgery, losing 200 pounds.

Rock Industries was the Debtor's next employer. She left Rock Industries after only four months when she had the opportunity to work at Maintainer. She worked at Maintainer for three and a half years. The Debtor was initially hired as a design engineer making $58,000 a year. After one year, due to some conflicts with her male supervisor, she accepted a lower-level position as a designer.

In the Spring of 2022, the Debtor decided to leave Maintainer to be closer to her sister in California. In May 2022, she was hired by MAF Industries making $85,000 a year but was fired after five months. The Debtor's position was advertised at $20,000 less after she was fired, leading the Debtor to believe the company was trying to reduce expenses and hire someone to replace her for less money.

At the time of the trial, October 28, 2022, the Debtor was unemployed, having been fired from MAF Industries. After the trial, the matter was stayed to allow the Debtor and the DOE to explore a possible resolution, but the parties were ultimately unsuccessful. The bankruptcy court held a supplemental evidentiary hearing on March 8, 2024, to update the status of the Debtor's income and expenses. Five weeks after being fired from MAF Industries, the Debtor began an engineering job at PB Loader in Fresno, California, making $78,000 a year. At the time of the supplemental hearing, she had been employed at PB Loader for about a one year and five months. With the exception of the five months she worked for MAF Industries, she was earning more income than she had ever earned since obtaining her engineering degree. The Debtor continues to receive counseling for her mental health issues.

The bankruptcy court found that after taxes, the Debtor will net approximately $59,042 per year or $4,920 per month. The bankruptcy court also found that the Debtor has $3,925 in total monthly expenses, leaving $995 in discretionary monthly income. She has no significant assets, has only $2,500 in retirement savings, leases her car, and lives in a rented trailer on a chicken farm.

## STANDARD OF REVIEW

A determination of undue hardship under Section 523(a)(8) is a question of law that we review *de novo*. *Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 779 (8th Cir. 2009). "Subsidiary findings of fact on which the legal conclusion is based are reviewed for clear error." *Id*. (quoting *Reynolds v. Pa. Higher Educ. Assistance Agency (In re Reynolds)*, 425 F.3d 526, 531 (8th Cir. 2005)). Under this standard, the bankruptcy court's findings will not be upset unless the court "made a definite mistake based upon the record as a whole." *Piccinino v. U.S. Dep't of Educ. (In re Piccinino)*, 577 B.R. 560, 563 (B.A.P. 8th Cir. 2017) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Deference is given to the bankruptcy court's findings of fact, and there is no clear error where more than one interpretation of evidence is possible. *Id*. (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

**DISCUSSION**

Student loan debts are not dischargeable in bankruptcy "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The debtor bears the "rigorous" burden of proving undue hardship by a preponderance of the evidence. *Jesperson*, 571 F.3d at 779. In the Eighth Circuit, a totality-of-the-circumstances test is used to determine undue hardship. *Id.* This test is "fact intensive and requires the bankruptcy court to examine the unique facts and circumstances of the particular case." *Cumberworth v. U.S. Dep't of Educ. (In re Cumberworth)*, 347 B.R. 652, 658 (B.A.P. 8th Cir. 2006) (citing various cases). Courts should consider: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable and necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003) (first citing *Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981), and then citing *Andresen v. Neb. Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 132 (B.A.P. 8th Cir. 1999)). "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt—while still allowing for a minimal standard of living—then the debt should not be discharged." *Id.* at 554–55.

The Bank argues on appeal that the bankruptcy court erred in ruling that the Debtor's student loan debt owed to the Bank is dischargeable as an undue hardship pursuant to 11 U.S.C. § 523(a)(8). Applying a *de novo* review, we determine the bankruptcy court did not err in finding the Bank's debt dischargeable.

**A.    Past, Present, and Reasonably Reliable Future Financial Resources**

The first factor of the totality-of-the-circumstances test has three prongs. "[T]he test requires consideration of a debtor's past, present, and reasonably reliable future financial resources." *Kemp v. U.S. Dep't of Educ. (In re Kemp)*, 588 B.R. 226, 232 (B.A.P. 8th Cir. 2018).

The Bank argues the bankruptcy court erred in finding the Debtor has had an unconventional work history and has worked at jobs that did not utilize her educational background to make ends meet. It asserts the Debtor has always worked within her career fields, except for a period of voluntary underemployment. The record supports the bankruptcy court's findings.

The bankruptcy court detailed the Debtor's work history. Since obtaining her first degree, the Debtor has had at least ten different jobs lasting from a few months to a few years across five different states. Of those positions, many have utilized her degrees, but some have not. The Debtor consistently pursued and obtained jobs within her career fields, first in teaching and then in engineering. When those jobs did not work out, or were eliminated through no fault of her own, she found employment wherever she could to earn income to pay towards her student loan debt. To the extent the Bank argues the Debtor was voluntarily underemployed, the record does not support the Bank's claim. Rather, the record shows that the Debtor demonstrated an effort to maintain steady employment. The evidence provides ample support for the bankruptcy court's findings regarding the Debtor's unconventional work history and her effort to maintain employment to make ends meet.

The Bank also argues that the bankruptcy court erred when it considered the Debtor's age in concluding her future financial resources are limited, arguing her salary has trended upward and she has a bright future. Age is one of the many factors considered by courts under the totality-of-the-circumstances test. *E.g., Jesperson*, 571 F.3d at 780 (debtor's "young age" weighed in favor of not discharging the debt); *Nielsen v. ACS, Inc. (In re Nielsen)*, 518 B.R. 529, 535 (B.A.P. 8th Cir. 2014) (same), *aff'd*, 622 F. App'x 594 (8th Cir. 2015); *Ford v. Student Loan Guar. Found. of Ark. (In re Ford)*, 269 B.R. 673, 677 (B.A.P. 8th Cir. 2001) (debtor's age and physical condition weighed "heavily in favor of discharging the student loans"). The bankruptcy court found the Debtor was 50 years old and took the Debtor's remaining working years into consideration. The bankruptcy court found the Debtor will continue to work, and, although she hopes to work until age 70, she has concerns about the physical demands of her current engineering position. In analyzing the

-6-

Debtor's reasonably reliable future financial resources, the bankruptcy court also considered other factors such as the Debtor's limited prospects of receiving an inheritance and the negligible amount of her retirement savings. The record supports the bankruptcy court's findings regarding the Debtor's limited future financial resources. The bankruptcy court did not err in its findings.

### B.    Reasonable and Necessary Living Expenses

The second factor of the totality-of-the-circumstances test requires the court to evaluate the Debtor's reasonable and necessary living expenses. "To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" *Jesperson*, 571 F.3d at 780 (quoting *DeBrower v. Pa. Higher Educ. Assistance Agency (In re DeBrower)*, 387 B.R. 587, 590 (Bankr. N.D. Iowa 2008)).

Based on the Debtor's $78,000 annual salary at the time of the supplemental hearing, the bankruptcy court found the Debtor has approximately $4,920 per month to pay her monthly expenses after taxes. The bankruptcy court itemized the Debtor's monthly expenses totaling $3,925[3] and concluded the "Debtor's expenses are reasonable and necessary to maintain a minimal standard of living." (Op. & Order 10, ECF No. 84). Based on the estimated net income and expenses, the bankruptcy court determined the Debtor would have discretionary income of $995 a month. The bankruptcy court further found the Debtor would need to use a portion of this discretionary income to catch up on retirement funding as she had only $2,500 in retirement savings and a limited number of working years ahead in which to make contributions.

---

[3]The expenses included $1,000 in rent ($1,000 less than the amount the Debtor was paying at the time of the trial in 2022), $408 for her car lease, $300 for fuel, $422 for utilities, $155 for telephone and internet, $545 in food (covering her special dietary needs following gastric bypass surgery), $100 for clothing, $200 for personal care, $225 for medical and dental costs, $100 for entertainment, $50 for charity, $300 towards her moving debt, and $120 for car insurance.

The Bank does not contest the bankruptcy court's conclusion that the Debtor's expenses are reasonable and necessary to maintain a minimal standard of living. Likewise, the Bank does not contest the Debtor's need to save for retirement. It disagrees with the bankruptcy court's conclusion that her expenses weigh in favor of discharging at least one loan.

## C. Other Relevant Facts and Circumstances

The final factor under the totality-of-the-circumstances test allows the court to evaluate "a wide range of facts and issues that may be relevant to determining undue hardship." *Fern v. FedLoan Servicing (In re Fern)*, 563 B.R. 1, 4 (B.A.P. 8th Cir. 2017). These facts and issues include:

> (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.

*Id.* (citing *Brown v. Am. Educ. Servs., Inc. (In re Brown)*, 378 B.R. 623, 626–27 (Bankr. W.D. Mo. 2007)). The list is not exhaustive, and each factor need not be addressed. *North Dakota v. Haugen*, 657 B.R. 861, 872 (D.N.D. 2024). "[T]his final inquiry allows a court to consider any other relevant information that would be persuasive to overcome the income and expense analysis of undue hardship under the first two factors of the totality of the circumstances test." *In re Fern*, 563 B.R. at 4–5.

The bankruptcy court properly considered several additional relevant factors in its analysis. One such factor was the Debtor's mental health. The Bank argues the bankruptcy court clearly erred in finding the Debtor continues to struggle with

her mental health and reached a speculative conclusion that her mental health concerns may put additional pressure on her budget. The Bank further argues that the Debtor did not offer testimony from a medical professional regarding her mental health issues or offer evidence that these issues would have an impact on her future ability to work as an engineer, citing to *Reynolds v. Pennsylvania Higher Education Assistance Agency (In re Reynolds)*, 425 F.3d 526 (8th Cir. 2005). The Bank's arguments are misplaced.

We have held that expert testimony concerning a debtor's mental health is not required in student loan dischargeability cases. Rather, the bankruptcy court may evaluate the debtor's testimony concerning her mental health as part of its totality-of-the-circumstances analysis. *See Shaffer v. U.S. Dep't of Educ. (In re Shaffer)*, 481 B.R. 15, 21 (B.A.P. 8th Cir. 2012) (citing *Cline v. Ill. Student Loan Assistance Ass'n (In re Cline)*, 248 B.R. 347, 350 (B.A.P. 8th Cir. 2000)). The Debtor testified about her mental health concerns at the trial in 2022 and again at the supplemental hearing in 2024. She has received counseling since she was 30 years old. It has been effective and helped her through various issues including successfully losing weight after bypass surgery. She also testified that working on her mental health issues has been expensive, and she included a monthly medical expense of $225 in her budget. The bankruptcy court considered the Debtor's testimony, evaluated her credibility, and factored this evidence into its analysis. The record supports the bankruptcy court's finding that the Debtor continues to struggle with and work on her mental health and must maintain a good counseling relationship going forward, which affects her budget.

Unlike the court in *Reynolds*, the bankruptcy court in this case did not find the Debtor's mental health issues would prevent her from working in her field of study or affect her future earning capacity. The bankruptcy court merely acknowledged that the Debtor's mental health issues had impacted her workplace performance in the past, but found "a likelihood that she will continue to work and make an income commensurate with her education and experience." (Op. & Order 8–9, ECF 84). The bankruptcy court appropriately considered the Debtor's mental health as a factor and did not clearly err in its findings or give undue weight to this issue.

As another factor, the bankruptcy court considered the availability of an income-based repayment plan for the federal student loan owed to the DOE and the potential tax consequences of loan forgiveness at the end of the repayment period.[4] The Bank argues the bankruptcy court placed undue weight on the likely tax consequences that could arise upon forgiveness, stating the bankruptcy court made the same mistake as the lower courts in *Jesperson* by not taking into consideration the fact that cancellation of debt "results in taxable income only if the borrower has assets exceeding the amount of debt being cancelled." *Jesperson*, 571 F.3d at 782 (citing 26 U.S.C. § 108(a)(1)(B)).

The availability of an income-based repayment plan is a factor the court should consider under the totality-of-the-circumstances test. *Jesperson*, 571 F.3d at 781. While it is a factor, "it cannot be the only basis to consider in determining undue hardship." *In re Fern*, 563 B.R. at 5 (citing *Lee v. Regions Bank Student Loans (In re Lee)*, 352 B.R. 91, 95 (B.A.P. 8th Cir. 2006)). Courts often consider hardships that may be associated with such repayment plans, including possible tax consequences, but the issue of potential tax consequences is not "dispositive of the issue of whether the [income-based repayment plan] represents a viable avenue for repayment of student loan debt." *In re Nielsen*, 518 B.R. at 536.

Here, the potential tax consequences arising from eventual debt forgiveness if the full sum of debt owed to the DOE is not paid under the income-based repayment plan was only one factor in the bankruptcy court's analysis. The bankruptcy court considered many other implications of an income-based repayment plan, including the likely growth of the debt during the repayment period, the effect of the debt on the Debtor's ability to obtain credit, and the mental and emotional impact of allowing the debt to grow during the repayment period. We find no clear error in the bankruptcy court's findings.

---

[4]The bankruptcy court also originally considered the impact of the DOE's newest plan: Saving on Valuable Education Plan (SAVE). In its order denying the Debtor's motion to reconsider, the bankruptcy court explained the availability of the SAVE plan was only a small part of its analysis and was not determinative.

In addition to these factors, the bankruptcy court also considered other factors relevant to the undue hardship analysis, including the Debtor's lack of adequate retirement savings and need to catch up on retirement contributions, the Debtor's efforts to obtain employment within her fields of study, and the Debtor's efforts to minimize her expenses. Of particular note, the bankruptcy court found between the trial in 2022 and the supplemental hearing in 2024, the Debtor moved to a trailer on a chicken farm to reduce her monthly rent by half. Other factors supporting the bankruptcy court's conclusion include the Debtor's attempts to reduce her monthly payment obligations by consolidating her student loans prior to bankruptcy, her limited prospects of an inheritance, and her remaining working years.

For the foregoing reasons, we find that the bankruptcy court did not err in its consideration of other relevant circumstances.

### D.     Discharge of the Bank's Loan

After the bankruptcy court's detailed analysis, it concluded that not discharging at least one of the Debtor's student loans would create an undue hardship. The Bank argues the bankruptcy court erred in discharging the debt owed to it. For the reasons already stated and the additional reasons stated below, the record supports the bankruptcy court's conclusion.

The bankruptcy court acknowledged that the Eighth Circuit is an "all or nothing" jurisdiction, meaning the court could not partially discharge portions of each loan. The bankruptcy court could, however, evaluate each loan and fully discharge one and not the other. *See Conway v. Nat'l Collegiate Tr. (In re Conway)*, 495 B.R. 416, 423 (B.A.P. 8th Cir. 2013), *aff'd*, 559 F. App'x 610 (8th Cir. 2014).

The bankruptcy court, as required, analyzed each loan separately to determine whether either loan imposed an undue hardship. The bankruptcy court considered the Debtor's good faith payments made to the Bank of approximately $770 a month prior to filing bankruptcy. The Debtor had consistently made payments to the Bank—over 100 payments in total—since the loans became payable after her

graduation in 2010 until her loans were consolidated in March 2020. In contrast, the bankruptcy court noted that only $1,300 had been applied to the DOE student loan.

In addition, the record revealed that unlike the DOE, which offers various income-based repayment plans, the Bank's post-consolidation loan terms are fixed and inflexible. Under its adopted policies, the Bank would not offer the Debtor any type of income-based repayment plan, further reduce her interest rate, or forgive the debt after a certain number of years. In contrast, the Debtor may qualify for an income-based repayment plan for the student loan held by the DOE.

These factors, along with the factors discussed earlier, support the bankruptcy court's conclusion that the Bank's debt should be discharged as an undue hardship. Upon our *de novo* review, we find no error in the bankruptcy court's decision.

## CONCLUSION

The bankruptcy court's findings, when viewed as a whole, support the conclusion that one, but not both, of the Debtor's student loans should be discharged as an undue hardship under the totality-of-the-circumstances test. The bankruptcy court did not err in finding the student loan debt owed to the Bank dischargeable under 11 U.S.C. § 523(a)(8).

For the reasons stated, the decision of the bankruptcy court is AFFIRMED.

_____

-12-